**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANN WEISS,<br>　　Plaintiff, | :<br>:<br>: | CIVIL CASE NO.<br>3:20-CV-00375 (JCH) |
| v. | :<br>: | |
| QUINNIPIAC UNIVERSITY,<br>　　Defendant. | :<br>:<br>: | SEPTEMBER 15, 2021 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 24)**

**I.　　INTRODUCTION**

Plaintiff Ann Weiss ("Weiss") originally brought this action in the Superior Court of Connecticut, alleging two claims under state law. See Compl. (Doc. No. 1-1). After amending her Complaint to allege two additional counts under federal law, defendants noticed the removal of the case to this court. See Am. Compl. (Doc. No. 1-2); Notice of Removal (Doc. No. 1). All four claims relate to alleged employment discrimination and retaliation against Weiss based on her age by defendant Quinnipiac University ("Quinnipiac"), and are brought under the Connecticut Fair Employment Practices Act, CONN. GEN. STAT. § 46a-58 et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 601 et seq.

Quinnipiac has moved for summary judgment on all claims. Mot. for Summ. J. (Doc. No. 24); Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (Doc. No. 24-1); Reply Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply") (Doc. No. 29). Weiss opposes that Motion. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Mem.") (Doc. No. 27).

1

For the reasons stated below, the court grants the defendant's Motion for Summary Judgment.

## II. FACTS

Plaintiff Weiss is a registered nurse ("RN"). Def.' Local R. 56(a)1 Statement at ¶ 1 ("Def.'s R. 56(a)1 Stmt") (Doc. No. 24-14); Pl.'s Local R. 56(a)2 Statement at ¶ 1 ("Pl.'s R. 56(a)2 Stmt") (Doc. No. 27-1). In August 2001, she was hired by defendant Quinnipiac, and remained employed there until 2018. Def.'s R. 56(a)1 Stmt at ¶ 1, 7; Pl.'s R. 56(a)2 Stmt at ¶ 1, 7. In the spring of that year, Quinnipiac undertook an assessment of Student Health Services ("SHS"), where Weiss worked. Def.'s R. 56(a)1 Stmt at at ¶ 2; Pl.'s R. 56(a)2 Stmt at at ¶ 2. The assessment was precipitated by the Connecticut Department of Public Health ("DPH"), which in April 2018 took the position that the nurse-initiated protocols at SHS exceeded the licensed authority of its staff nurses. Def.'s R. 56(a)1 Stmt at ¶ 3; Pl.'s R. 56(a)2 Stmt at ¶ 3.[1] As a result of the assessment, and in light of the DPH's position, Quinnipiac elected to permanently shift SHS from its "24/7 medical model, focused on treatment of specific illnesses and diseases, to a wellness model, operating during typical business hours and focused on preventative services and health education." Def.'s R. 56(a)1 Stmt at ¶ 4; Pl.'s R. 56(a)2 Stmt at ¶ 4.

This shift precipitated significant staffing changes for SHS nurses. Because SHS now required more hours from providers and fewer from nurses, the RN roster was

---

[1] In her Statement of Disputed Material Facts, Weiss asserts that "[t]he University intentionally sought a determination by the DPH that the nurse-initiated protocols exceeded the licensed authority of SHS's nursing staff." Pl.'s R. 56(a)2 Statement of Disputed Material Facts at ¶ 1 ("Pl.'s Material Facts"). In support of this statement, she cites to page 95 of Chase's deposition. Id. That page, however, is not included by plaintiff in her Exhibit 6, and support for this statement does not appear elsewhere in the record.

reduced from 16 down to 7, with three additional per diem nurses and one RN assigned to the Allergy Clinic for eight hours per week. Def.'s R. 56(a)1 Stmt at ¶ 5; Pl.'s R. 56(a)2 Stmt at ¶ 5. To implement these reductions, Quinnipiac invited each of its nurses to apply to the newly available positions. Def.'s R. 56(a)1 Stmt at ¶ 6; Pl.'s R. 56(a)2 Stmt at ¶ 6.

On June 4, 2018, Quinnipiac officially posted the RN positions, and Weiss applied and was invited to interview. Def.'s R. 56(a)1 Stmt at ¶ 8, 10; Pl.'s R. 56(a)2 Stmt at ¶ 8, 10. The interviews were conducted by Christy Chase ("Chase"), the Director of Student Health Services, and Nancy Hunter ("Hunter"), the Associate Director of Student Health Services. Dr. Philip Brewer ("Brewer"), the University Medical Director, participated in some of the interviews, including Weiss'. Def.'s R. 56(a)1 Stmt at ¶ 11; Pl.'s R. 56(a)2 Stmt at ¶ 11. Chase created a list of questions for the interviews, and "pretty much stuck to the questions at hand for everybody." Dep. of Nancy Hunter, Def.'s Ex. E – Part 2, at 44 (Doc. No. 24-9); Dep. of Phillip Brewer, Def.'s Ex. F, at 63 (Doc. No. 24-10); Interview Questions, Def.'s Ex. B, at 20-23 (Doc. No. 24-5); Def.'s R. 56(a)1 Stmt at ¶ 12; Pl.'s R. 56(a)2 Stmt at ¶ 12.[2]

---

[2] In her Amended Complaint, Weiss alleges that she was asked the question about where she saw herself in five years, but that the same question "was not asked of other interviewees." Am. Compl. at ¶ 24. Further, in her Local Rule 56(a)2 Statement, she denies that the list of questions created by Chase "were posed to each candidate." Pl.'s R. 56(a)2 Stmt at ¶ 12.

She does not, however, provide any support for her denial, as is required by Local Rule 56. See D. Conn. Local R. 56 ("[a]ll denials must meet the requirements of Local Rule 56(a)3," which in turn requires that "each denial in an opponent's Local Rule 56(a)2 Statement . . . must be followed by a specific citation . . . Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence"). Indeed, in her deposition, she gives conflicting testimony regarding this allegation. See Dep. of Ann Weiss, Def.'s Ex. A, at 131-32 (Doc. No. 24-4) (responding to a question asking if she had "any reason to think that any of the other candidates who were reapplying were asked different questions" by saying that she "didn't really talk to them about it. I didn't talk to anybody about their interviews. I mean, I didn't really talk to anybody about the questions they were asked during their interviews"); but see id. at 106-07 (responding to a question that noted she had identified two other nurses who were not asked the question

On June 6, 2018, Weiss had her interview. Def.'s R. 56(a)1 Stmt at ¶ 13; Pl.'s R. 56(a)2 Stmt at ¶ 13. Towards the end of the interview, she was asked a question along the lines of "where do you see yourself in five years." Def.'s R. 56(a)1 Stmt at ¶ 14; Pl.'s R. 56(a)2 Stmt at ¶ 14; Dep. of Ann Weiss, Def.'s Ex. A, at 108. Weiss "was taken aback," and "responded by saying that [she] thought it was an unfair question to ask somebody [her] age during an interview." Dep. of Ann Weiss, Def.'s Ex. A, at 102-03; Dep. of Christy Chase, Def.'s Ex. D, at 34 (Doc. No. 24-7); Pl.'s Material Facts at ¶ 4. She also said that she might be on a boat "like [Brewer]." Def.'s R. 56(a)1 Stmt at ¶ 14; Pl.'s R. 56(a)2 Stmt at ¶ 14. Chase then adjusted the question to ask where Weiss saw the health center in five years. Def.'s R. 56(a)1 Stmt at ¶ 15; Pl.'s R. 56(a)2 Stmt at ¶ 15; Dep. of Ann Weiss, Def.'s Ex. A at 103.

The interview concluded, and Chase, Hunter, and Brewer met to compare notes about the interviewees and share their impressions. Def.'s R. 56(a)1 Stmt at ¶ 16; Pl.'s R. 56(a)2 Stmt at ¶ 16. The parties dispute what happened next. Defendants say that when Weiss' interview came up, "the consensus was that her interview had been a poor one." Def.'s R. 56(a)1 Stmt at ¶ 16. In particular, they noted three issues with her interview: first, that her "focus was not on the students;" second, that "her demeanor was tense or at times angry;" and third, that she "was preoccupied with the notion of doing 'damage control' with regard to the shift to the wellness model rather than thinking positively about the change." Id. This version of events is supported by the deposition testimony of Chase and Hunter. Id.

---

in her interrogatory responses by saying that she had not approached them but that they "had finally gotten together probably two weeks after I had been notified that I lost my job" and the two other nurses did not at that time recall being asked the question).

4

Plaintiff says that Chase, Hunter, and Brewer "conspired to come up with the coordinated untrue false reasons as to why [Weiss] was not to be retained, in order to conceal the real reason for her non-selection, which was retaliation for having challenged the inquiry into her retirement plans." Pl.'s Material Facts at ¶ 5. The evidence in the record plaintiff points to, however, provides no support for this allegation. Id. Page 86 of Chase's deposition discusses how she perceived Weiss to have a negative view of the changes to the SHS model during the interview; page 43 of Brewer's deposition is not included in the exhibits plaintiff provided to the court; and pages 50-53, 56, and 66 of Hunter's deposition provide support for defendant's, not plaintiff's, side of the story. Dep. of Christy Chase, Def.'s Ex. D, at 86; Dep. of Phillip Brewer, Pl.'s Ex. 12 (Doc. No. 27-14) (skipping from page 41 to 44); Dep. of Nancy Hunter, Def.'s Ex. E – Part 2, at 50-53, 56, 66.

Ultimately, Weiss was not selected for one of the nursing positions. Chase and Hunter both testified that they believed all the internal candidates were qualified, as they had all been performing the role already. Def.'s R. 56(a)1 Stmt at ¶ 19; Dep. of Nancy Hunter, Def.'s Exs. E – Part 1, 2, at 41-42; Dep. of Christy Chase, Def.'s Ex. D, at 99. Because of this, they said they based their selection decisions primarily on the interview. Def.'s R. 56(a)1 Stmt at ¶ 19. They did not consider prior evaluations of the candidates, though Brewer did consider his personal experience working with them. Def.'s R. 56(a)1 Stmt at ¶ 19; Pl.'s R. 56(a)2 Stmt at ¶ 19. Although Quinnipiac did not rehire Weiss, they did rehire the oldest applicant in the group, who was 69, as well as another candidate who was the same age as Weiss. Def.'s R. 56(a)1 Stmt at ¶ 22; Pl.'s

R. 56(a)2 Stmt at ¶ 21.[3]  Another nurse a year older than Weiss was also retained in a per diem role.  Id.

### III. STANDARD OF REVIEW

A Motion for Summary Judgment will be granted if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986).  The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A genuine issue of material fact exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor.  See, e.g., Biondo v. Kaledia Health, 935 F.3d 68, 73 (2d Cir. 2019) (citing Anderson, 477 U.S. at 248)).

### IV. DISCUSSION

Plaintiff's claims in this case arise from a simple question asked of her in an interview: "where do you see yourself in five years?"  Defendant Quinnipiac contends that it was nothing more than an innocent query, pulled from a Google search by the interviewer and asked of every candidate.  Dep. of Christy Chase, Def.'s Ex. D, at 108; Def.'s R. 56(a)1 Stmt at ¶ 12.  Weiss sees something more sinister.  She argues that, by asking this question of someone nearing the usual age of retirement, the defendant was

---

[3] In her Local Rule 56(a)2 Statement, plaintiff combines defendant's paragraphs 21 and 22 into a single paragraph, deletes the reference to Quinnipiac rehiring the oldest applicant in the group and the applicant that was Weiss' same age, and admits the paragraph in full.  Compare Def.'s R. 56(a)1 Stmt at ¶ 21-22, with Pl.'s R. 56(a)2 Stmt at ¶ 21.  The court presumes this was in error, and, because the omitted fact was never denied, admits it into the record as well.

6

in reality "pursuing [an ageist and] discriminatory line of inquiry." Pl.'s Mem. at 1. When Weiss pushed back, she alleges, "she was retaliated against for opposing" the question, and passed over for the RN position "shortly thereafter based on pretextual bases which on their face were implausible." Id.

From the single interview question and the alleged retaliation that followed, Weiss brings four claims. In Count One, she alleges discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a-58 et seq. In Count Two, she alleges retaliation in violation of the same. Counts Three and Four are brought under federal law. Count Three alleges discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 601 et seq., and Count Four is a retaliation claim under the same statute.

As both parties acknowledge, "'CFEPA claims are analyzed under the same legal framework as claims under . . . the ADEA.'" Def.'s Mem. at 9 n. 2 (quoting Azam v. Yale University, No. 18-CV-1260, 2020 WL 5803222, at *7 n. 3 (D. Conn. Sept. 29, 2020); see also Pl.'s Mem. at 3 n. 1 (quoting Connecticut Supreme Court cases holding the same). As such, the court analyzes the state and federal law discrimination claims together, and then does the same with the retaliation claims.

A.   Discrimination

The Second Circuit "address[es] ADEA claims under the McDonnell Douglas burden-shifting framework." Chapotkat v. County of Rockland, 605 F. App'x 24, 26 (2d Cir. 2015). Under that framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If plaintiff is able to do so, then "the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the challenged

7

action." Id. (internal quotations omitted). Once that has occurred, "the burden shifts back to the plaintiff to show that the defendant's explanation is pretext for discrimination." Id.

To establish a prima facie case of age discrimination under the ADEA and the CFEPA, a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced [an] adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. Green v. Town of East Haven, 952 F.3d 394, 403 (2d Cir. 2020) (internal quotations and citations omitted). The burden on plaintiff on this stage "is not a heavy one," Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010), and can be met, for instance, by simply demonstrating that "an ADEA-covered employee is replaced by a younger worker." Delaney v. Bank of America Corp., 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012), aff'd 766 F.3d 163 (2d Cir. 2014) (citing Weiss v. JPMorgan Chase & Co., 332 F. App'x 659, 660 (2d Cir. 2009); see also Gorzynski, 596 F.3d at 107 (finding that a prima facie case had been made when plaintiff "was over forty years old, was undisputedly qualified for her position, was fired, and was then replaced by a woman in her twenties").

Once a prima facie case has been established, the burden shifts back to the defendant in step two of the McDonnell Douglas analysis. At this stage, defendants must rebut plaintiff's prima facie case by proffering a "legitimate, nondiscriminatory reason" for their action. Chapotkat, 605 F. App'x at 26. This is also not a high standard. Indeed, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reason[ ]. It is sufficient if the defendant's evidence raises a

genuine issue of fact as to whether it discriminated against the plaintiff." Delaney v. Bank of America Corp., 766 F.3d 163, 168 (2d Cir. 2014).  For instance, the Second Circuit has consistently held that a "company-wide reduction-in-force . . . constitutes a legitimate, nondiscriminatory reason for termination of employment." Id. at 166, 168 (citing Roge v. NYP Holdings, Inc., 257 F.3d 164, 168-69 (2d Cir. 2001), Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000)); see also Martinez v. New York City Transit Authority, 672 F. App'x 68, 70 (2d Cir. 2016) (finding that the defendant had "advanced a legitimate, nondiscriminatory reason for termination the [plaintiff's employment]: a reduction in force . . . necessitated by a budget shortfall of several hundred million dollars").

      Once this has occurred, the burden shifts back to the plaintiff for the final step of the analysis.  At this stage, the plaintiff must show "that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (internal quotations omitted) (quoting Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009)); see also Chapotkat, 605 F. App'x at 26 ("[a]t this third step in the analysis . . . the ADEA plaintiff must show that age was a 'but-for' cause of the employer's action").  Since the defendant has already proffered a legitimate, nondiscriminatory reason for the adverse action, plaintiff may "no longer rely on the prima facie case." Delaney, 766 F.3d at 168 (internal quotations and citations omitted).  Instead, "to resist summary judgment on an ADEA claim successfully, a plaintiff must demonstrate that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanations are pretextual and that, but for the

plaintiff's age, the employer would not have taken the action it did." Chapotkat, 605 F. App'x at 26.

Here, Quinnipiac argues that Weiss has failed to make even a prima facie case of age discrimination.  Def.'s Mem. at 8-18.  She "rests her . . . claim principally on a single question posed to all applicants" during the interview process, a question that "is routine in interviews for virtually any type of position." Id. at 9.  That is hardly sufficient, they argue, to "give rise to an inference that her age was a 'but-for' cause of her non-selection . . . [and] satisfy the critical fourth element of an ADEA prima facie case." Id.  Weiss counters by arguing that, not only has the prima facie case has been made, but also that Quinnipiac's proffered reasons for her non-selection – namely, her poor performance in the interview – were a pretextual cover for their "discriminatory and retaliatory decision" to not retain her because she "oppos[ed] and refus[ed] to respond to the ageist line of inquiry" defendant pursued in the interview.  Pl.'s Mem. at 1, 3, 14-22.

Even assuming, arguendo, that Weiss has made a prima facie showing of age discrimination,[4] the court grants defendant's Motion for Summary as to her CFEPA and

---

[4] In assessing ADEA discrimination claims under the McDonnell Douglas framework, courts in the Second Circuit often assume without deciding that a prima facie case of age discrimination has been made, and decide the Motion based on the third prong of the test.  See, e.g., Delaney, 766 F.3d at 168 (noting that "[t]he district court determined that [plaintiff] failed to establish a prima facie case of age discrimination, but because this burden is 'not onerous,' we will assume arguendo that Delaney has met [it]") (internal citations omitted).  This is because the plaintiff's "burden at the prima facie stage is minimal." Brophy v. Chao, No. 17-CV-9527, 2020 WL 4040742, at *8 (S.D.N.Y. July 16, 2020) (internal quotations and citations omitted).  "'A plaintiff who can prevail at the third stage of the McDonnell Douglas process [will have] necessarily demonstrated circumstances giving rise to an inference of discrimination, and a plaintiff who cannot prevail at the third stage cannot prevail on his/her claim whether or not there exist circumstances giving rise to an inference of discrimination.'" Id. (quoting Johnson v. Ultravolt, Inc., No. 13-CV-3518, 2015 WL 541519, at *4 (E.D.N.Y. Feb. 10, 2015).

Accordingly, the court here assumes arguendo that plaintiff has made a prima facie showing and moves on to the second and third prongs of the McDonnell Douglas test.

ADEA discrimination claims because she has failed to introduce into the record any admissible evidence demonstrating that defendant's proffered reasons for declining to retain her were pretextual, or that her age was even a factor in that decision – let alone a "but-for" cause of it.  Such a holding is appropriate in this case for three separate reasons, each of which the Second Circuit has determined militate against plaintiff's claims here.

As a preliminary matter, the Second Circuit has indicated that, when staffing reductions do not have a "disparate impact on older employees," that "strongly suggests that age was not a factor in [the] [p]laintiff's termination." Martinez, 672 F. App'x at 70; see also Dunaway v. MPCC Corp., 669 F. App'x 21, 23 (2d Cir. 2016) (affirming the decision of the district court to grant an employer's Motion for Summary Judgment and noting that it was "undisputed that [the defendant] employed workers of similar age or older than [plaintiff], and that after he was passed over for a position as senior project manager, a candidate who was hired was only one year younger").  In Martinez, the court granted an employer's Motion for Summary Judgment as the ADEA age discrimination claims brought by five plaintiff-employees terminated during a reduction in force.  In doing so, it noted that, in the units where the plaintiffs worked, numerous employees who were older than them were retained.  Id.  For the one plaintiff where that was not the case – and could not have been the case because the employee was the oldest in her group – the court still determined there had not been a disparate impact because "seven of the 16 employees who kept their jobs . . . were over the age of 50." Id.

Here, the record is equally clear that Quinnipiac's reorganization of SHS did not disproportionately impact older nurses. The "new staffing model . . . reduc[ed] [ ] the RN roster from 16 to 7, plus three per diem nurses and an RN assigned to an Allergy Clinic 8 hours per week. Def.'s R. 56(a)1 Stmt at ¶ 5; Pl.'s R. 56(a)2 Stmt at ¶ 5. Weiss was 61 at the time she was non-selected.[5] Def.'s R. 56(a)1 Stmt at ¶ 22; Pl.'s R. 56(a)2 Stmt at ¶ 21. The oldest nurse in the group, who was 69, was retained, as was another nurse the same age as Weiss. Id. Four other nurses over the age of 50 were selected as well, including one as the allergy nurse and another in a per diem role. Id. And although two other nurses over the age of 50 were also not rehired, the even distribution of ages in both groups is such that it "strongly suggests that age was not a factor in [Weiss'] termination." Martinez, 672 F. App'x at 70.

Second, the admissible evidence brought forth by Weiss falls far short of what is necessary at this stage to establish a genuine dispute of material fact as to whether her age was a "but-for" cause of her non-selection. This remains the case even when viewing the evidence in the light most favorable to her, as the court must do at this stage. At most, Weiss has presented evidence from which a reasonable juror could conclude that she was asked a question during her interview – "where do you see yourself in five years" – that was in reality an inquiry into her retirement plans, and that

---

[5] There appears to be a dispute between the parties as to Weiss' exact age at the time she was non-selected. In her Amended Complaint, she says only that she was "born in 1956," meaning that in 2018 she would have been 61 or 62. Am. Compl. at ¶ 1. In its Rule 56(a)1 Statement, Quinnipiac asserts she was 61. Def.'s R. 56(a)1 Stmt at ¶ 22. They say the same in their Memorandum. See, e.g., Def.'s Mem. at 17. Plaintiff, however, says in her Memorandum that she was 62. Pl.'s Mem. at 1. Her attorney, in his deposition questions, also says she was 62. See Dep. of Philip Brewer, Def.'s Ex. F at 58. The court does not view the discrepancy between Weiss being 61 or 62 at the time of her non-selection as material in this case. However, because plaintiff has failed to properly deny defendant's assertion in its Local Rule 56(a)1 Statement as to her having been 61, the court uses that age here. See supra n. 3.

12

she pushed back against the question as ageist. She has not adduced any further evidence to show that the question, her response, or her age were factors in Quinnipiac's decision not to retain her, much less "but-for" causes of it.

Indeed, the Second Circuit has routinely affirmed district courts' dismissals of a plaintiff's ADEA discrimination claims at the summary judgment stage in circumstances where the record evidence was much more expansive than it is here. In doing so, it has consistently held that "the ADEA . . . 'does not make all discussion of age taboo.'" Dunaway, 669 F. App'x at 23 (quoting Rasking v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997)). Simply inquiring or expressing "concern about . . . the likelihood of an employment candidate's retirement within a short timeframe[ ] does not constitute age discrimination under the ADEA." Dunaway, 669 F. App'x at 23 (quoting Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir. 1997)) (internal quotations omitted).

In Dunaway, the employer's questions about the plaintiff's retirement plan were much more direct than those of Quinnipiac here. In that case, the interviewer said "that he was looking for an employee who would stay for 10 to 15 years; asked [plaintiff] his age . . . and asked [plaintiff] whether he was 'capable of withstanding the vigors [sic] of the position.'" Dunaway, 669 F. App'x at 22. Still, the court held that, since "the questions were germane to the probable length of [plaintiff's] employment and his fitness to do the job . . . those circumstances do not give rise to an inference that [the defendant] had a discriminatory motive not to hire him." Id. at 23. As such, the court held that the plaintiff had not even met the lower standard of making a prima facie case of age discrimination. Id.; cf. Martinez, 672 F. App'x at 71 (finding that an employee who was summoned into the office of her "supervisor's supervisor" and bluntly asked

"'[c]an you retire?'" before being told that "'[p]eople who are eligible to retire should retire and make room for the younger generation'" had brought forth evidence demonstrating "an open declaration of bias").

Similarly, in Chapotkat, the plaintiff "present[ed] only [defendant's] comments made during his interview" in an attempt to defeat summary judgment. Chapotkat, 605 F. App'x at 26. In that case, the interviewer had told the plaintiff that "he did not 'like when people in their late fifties and sixties come and they don't stay here.'" Id. at 26-27. The interviewer then said that he "'prefer[red] someone who could stay here for a long time'" before asking the plaintiff his age." Id. at 27. Plaintiff responded by saying that "he was 51 and that he intended to work 15 more years." Id. Still, the Second Circuit found that "nothing [in the record] suggest[ed] that age was a 'but-for' cause of the [defendant's] decision not to promote [the plaintiff]", and upheld the district court in granting defendant's Motion for Summary Judgment. Id.

The evidence brought forth in this case by Weiss is more threadbare than what was in the record in Dunaway and Chapotkat. Even taking into account "the context of the inquiry", as Weiss stresses this court must do, she has not demonstrated anything beyond a single stray question asked of her in an interview that, drawing all inferences in her favor at this stage, could be said to concern her age and retirement plans. Pl.'s Mem. at 2. But if "[s]tray remarks alone are insufficient to defeat summary judgment," then so also is a stray question that asks about age and retirement plans in only an indirect manner. Martinez, 672 F. App'x at 71 (citing Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)).

Finally, absent any evidence that defendant considered Weiss' age in deciding not to retain her, plaintiff attempts to demonstrate pretext by highlighting her qualifications for the position, questioning Quinnipiac's hiring process and criteria, and impugning the qualifications of the three interviewers.  See, e.g., Pl.'s Mem. at 1, 4-6, 12-14.  In particular, she expresses her disbelief that such a "flawed and subjective selection process [that] principally focused on a short rote interview" could be used to dismiss her in light of her "deep reservoir of demonstrated excellence over her long professional career as a nurse and her long tenure with [Quinnipiac]."  Id. at 1.  Defendant, in turn, does not dispute that Weiss was qualified for the position.  Def.'s R. 56(a)1 Stmt at ¶ 19.  Instead, they maintain that, forced to downsize and non-select several qualified nurses, they chose to emphasize performance in the interview as the primary metric upon which to make these difficult decisions.

This court will not second-guess that decision, or Quinnipiac's hiring process more broadly.  "While [this court] must ensure that employers do not act in a discriminatory fashion, [it does] 'not sit as a super-personnel department that reexamines an entity's business decisions.'"  Delaney, 766 F.3d at 169 (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)).  Nor does Weiss' argument that she "had been [a] successful employee[ ]" change this calculus, as "even successful employees may be terminated in a[ ] [reduction in force]."  Martinez, 672 F. App'x at 70-71.  Moreover, courts have routinely found that basing decisions on a prospective employee's interview is an appropriate, non-discriminatory method for hiring.  See, e.g., Brophy, 2020 WL 4040742, at *9-10 (declining to find pretext where the interviewer had "prepared ten detailed questions," and determined that "[p]laintiff did not perform as well

15

on the interview" as the other candidates, while noting that "it simply is not the case that candidates' interview performances cannot form the basis of a legitimate, non-discriminatory employment decision"). Absent evidence in the record to demonstrate discriminatory intent, plaintiff's attack on Quinnipiac's hiring process is not, by itself, sufficient to demonstrate that its proffered reasons for declining to select Weiss were pretextual.

For these reasons, the court grants defendant's Motion for Summary Judgment as to plaintiff's Count One CFEPA discrimination claim and her Count Three ADEA discrimination claim.

B.  Retaliation

Retaliation claims under the ADEA are "also analyzed under the McDonnell Douglas burden-shifting test described above." Gorzynski, 596 F.3d at 110. "[A] plaintiff claiming retaliation is required to present four elements to make out a prima facie case: (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action." Reiss v. Hernandez, 852 F. App'x 620, 622 (2d Cir. 2021) (citing Kessler v. Westchester County Dep't of Soc. Services, 461 F.3d 199, 204 (2d Cir. 2006); see also Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43 (2d Cir. 2019).

Defendant again argues that Weiss has failed to make even a prima facie case of retaliation, as she did not engage in a protected activity by challenging the question about where she saw herself in five years during the interview and, even if she did, she cannot show that the protected activity was the "but-for" cause of her non-selection. Def.'s Mem. at 18-25; Ninying v. New York City Fire Dep't, 807 F. App'x 112, 115 (2d

16

Cir. 2020) ("to state a retaliation claim under . . . the ADEA . . . [plaintiff is] required . . . to allege that his protected activity was the but-for cause of the adverse employment action").[6]  Plaintiff counters by arguing that the prima facie case has been made, Pl.'s Mem. at 22-26, and that her decision to push back "on the ageist question" was the real reason she was not retained.  Pl.'s Mem. at 25.  In particular, she points to her own deposition responses to argue that "after she objected [to the question] . . . the demeanor in the room shifted.  This supports the proposition that her push back . . . was the reason for her having been deselected."  Id.  In essence, there are two steps to Weiss' arguments for why defendant's Motion for Summary Judgment should be denied.  The first is straightforward: "she was retaliated against for opposing and refusing to respond to the ageist line of inquiry."  Id. at 1.  But she also argues that,

---

[6] The court notes that the Second Circuit has not definitively opined in a binding decision on whether the same "but-for" cause standard for ADEA discrimination claims articulated by the Supreme Court in Gross applies to retaliation claims under the statute as well.  As another district judge in the Circuit has observed:

> "Regarding causation, the law is unsettled as to whether the Supreme Court's decision in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009), requires but-for causation only for ADEA claims of disparate treatment, leaving ADEA retaliation claims to be decided under the more relaxed "motivating factor" test.  See Fried v. LVI Servs., Inc., 500 F. App'x 39, 41–42 (2d Cir. 2012) (summary order) (declining to reach the issue of whether the "but-for test or the motivating factor analysis" applies to ADEA retaliation claims because the record was insufficient to satisfy either standard).  Since Fried, the Supreme Court has held that but-for causation applies to retaliation claims under Title VII, see Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013), and the Second Circuit and numerous courts in this District in non-binding decisions have applied Nassar to conclude that ADEA retaliation plaintiffs must establish "but-for" causation in a prima facie case.  See, e.g., Ninying, 807 F. App'x at 115 ("the ADEA or Title VII, both ... required [plaintiff] to allege that his protected activity was the but-for cause of the adverse employment action"); Torre v. Charter Commc'ns, Inc., No. 19 Civ. 5708, 2020 WL 5982684, at *6 (S.D.N.Y. Oct. 8, 2020)."

Massero v. Bd. of Educ. of City Sch. Dist. of City of New York, No. 17-CV-8191, 2021 WL 184364, at *5 (S.D.N.Y. Jan. 19, 2021).

The court here uses the standard articulated in Ninying, as it is the most recent, albeit non-binding, holding from the Second Circuit.  It also notes that plaintiff, in her Memorandum, also appears to accept this standard as put forth by defendant.  Pl.'s Mem. at 26 ("[l]astly [p]laintiff submits that whether [her] statutorily protected activity is a "[b]ut-[f]or" cause for her non-selection is a question for the jury").

because the question and her reaction to it soured the interview, and defendant based its hiring decisions primarily on that interview, there was a clear connection between her protected activity and the adverse employment action. Id. at 25.

The court is not persuaded by this argument. As discussed above in section IV.A, Weiss has not introduced any admissible evidence into the record upon which a reasonable juror could conclude that her decision to challenge the question was a "but-for" cause of her non-selection.[7] Even assuming arguendo that she has made a prima facie case of retaliation, there is no evidence in the record to suggest that defendant's stated concerns with her interview – namely her lack of focus on students and negative view of the shift to the wellness model – were a pretextual cover for their decision to retaliate against her for pushing back against the question.

Similarly, her argument that the question soured the interview also misses the mark. For one, Weiss stated in her deposition that "there wasn't much left to [the interview]" after the question was asked. Dep. of Ann Weiss, Def.'s Ex. A – Part 2, at 108. But even had it been the first question asked, the Second Circuit "[has] long held, when considering the legitimacy of an employer's reason for an employment action, [that] we look to what motivated the employer." Vasquez v. Empress Ambulance Service, Inc., 835 F.3d 267, 275 (2d Cir. 2016) (internal quotations and citations omitted) (emphasis in original). Thus, even if Weiss were to show that the question and her reaction to it had a cascading effect on the rest of the interview that caused it to go poorly, she would still have to demonstrate that Quinnipiac, in deciding not to retain her,

---

[7] This remains true even under the more relaxed "motivating-factor" test, as Weiss has not demonstrated that the interviewers were motivated by her pushback to the question in deciding not to retain her.

had retaliatory motives. However, she has not introduced any evidence upon which a reasonable juror could conclude that was the case.

Accordingly, the court grants defendant's Motion for Summary Judgment as to plaintiff's Count Two CFEPA retaliation claim and her Count Four ADEA retaliation claim.

## V.   CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment (Doc. No. 24) is granted as to all claims.

**SO ORDERED.**

Dated at New Haven, Connecticut this 15th day of September 2021.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
